IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JESSICA BROOKS ) | |
| o/b/o D.M.W.B., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:15-cv-00851WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

**I.    INTRODUCTION**

Plaintiff Jessica Brooks, on behalf of her minor son D.M.W.B., applied for supplemental security income ("SSI") under Title XVI of the Social Security Act. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found D.M.W.B. not disabled since the date the application was filed. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to

proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 7). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 includes the standard for defining child disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The statute provides that an individual under age eighteen ("18") shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (1999).

The sequential analysis for determining whether a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, she is not disabled.
>
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, she is not disabled.

---

Social Security matters were transferred to the Commissioner of Social Security.

> 3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, and Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997); *see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

> In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being. If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled. A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities. An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.

*Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 752 (11th Cir. 2011) (internal citations omitted).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal to, or functionally equivalent in severity to, a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether the ALJ's findings concerning the steps are supported by substantial evidence. "Under this limited standard of review, [the court] may not make fact-findings, re-weigh the evidence, or substitute

3

[its] judgment for that of the [ALJ]." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Where substantial evidence supporting the ALJ's fact findings exists, [the court] cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings." *Id.* (citing *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991)); *see also McMillian, o/b/o A.T.F. v. Comm'r of Soc. Sec.*, 521 F. App'x 801, 802 (11th Cir. 2013) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) ("'Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence.'").

### III.   ADMINISTRATIVE PROCEEDINGS

D.M.W.B. was six years old at the time of the administrative hearing before the ALJ. *See* Tr. 13, 43 (noting D.M.W.B.'s birthday to be November 2, 2007, and the date of the administrative hearing before the ALJ to be March 14, 2014). Following the hearing, the ALJ found at Step One that D.M.W.B. had not engaged in substantial gainful activity at any time since March 29, 2013. *Id.* The ALJ found at Step Two that D.M.W.B. has the severe impairments of "attention deficit hyperactivity disorder, oppositional defiant disorder[,] and asthma." *Id.* Next, the ALJ concluded under Step Three that these impairments do not meet or medically equal in severity the criteria for any impairment in the Listing of Impairments. *Id.* The ALJ further found that D.M.W.B.'s impairments do not functionally equal in severity any such listings because

D.M.W.B. has either less than marked limitations or no limitations in each of the six domains of function. *Id.* at 13-24. Consequently, the ALJ found that D.M.B.W. was not disabled. Tr. 24.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision:  (1) whether "[t]he Commissioner's decision should be reversed, because the teacher questionnaire completed by Ms. Hamlet–evidence the ALJ fails to address in any meaningful way–contains abundant evidence that cuts against the ALJ's conclusion"; and (2) whether "the ALJ erred by failing to provide meaningful rationale to support his meets, medically equals and functionality equals determination."  Pl.'s Br. (Doc. 12) at 3.

## V.   DISCUSSION

### A.   Whether the ALJ's consideration and discussion of Ms. Hamlet's questionnaire was proper.

Plaintiff first argues that the Commissioner's decision should be reversed because the ALJ failed to meaningfully consider the evidence submitted by D.M.W.B.'s teacher, Ms. Amy Hamlet ("Ms. Hamlet"), through a teacher questionnaire she completed in March 2014. *Id.* at 3-8. Specifically, Plaintiff argues that the ALJ erred by ignoring the evidence in the report that is patently inconsistent with the ALJ's ultimate functionality findings. *Id*. at 8. To support this assertion, Plaintiff points the court to *Wilson ex rel. T.M.W. v. Colvin* for the premise that an ALJ "cannot 'pick and choose' evidence from [a teacher] questionnaire that supports [his] conclusion and ignore evidence that does not."

*Id.* at 8 (citing *Wilson ex rel. T.M.W. v. Colvin*, No. CA 2:12-307-C, 2013 WL 788075, at *8 (S.D. Ala. March 1, 2013)).  Plaintiff also references *Green v. Commissioner of Social Security*, which provides that an ALJ's decision must sufficiently enable a court to conclude that the ALJ fully considered a claimant's condition, and did not ignore evidence in a teacher's evaluation that was patently inconsistent with the ALJ's ultimate findings.  *Id.* (citing *Green v. Comm. of Soc. Sec.*, No. 6:09-cv-1936-Orl-28DAB, 2010 WL 4941425, at *4 (M.D. Fla. Oct. 27, 2010)).

The Commissioner argues that, even though teacher evaluations are considered "other" sources and thus not entitled to special weight or significance, the ALJ properly considered the teacher questionnaire from Ms. Hamlet.  Comm'r's Br. (Doc. 13) at 5-8.  The Commissioner notes that the ALJ was not required "to recite every part of Ms. Hamlet's opinion[,]" *id.* at 8, and points to the ALJ's inclusion of portions of Ms. Hamlet's teacher questionnaire that the ALJ explicitly noted in his opinion.[2] *Id.* at 6.  Further, the Commissioner argues that *Wilson* and *Green*, cited by Plaintiff, are distinguishable because, in contrast to the former, the ALJ in this matter "cited portions of Ms. Hamlet's opinion that weighed in favor of limitations[,]" *id.* at 7, and, in contrast to the latter, the ALJ in this matter "considered [Ms. Hamlet's] responses under each functional domain and noted [that D.M.W.B.] had some problems in the domains of

---

[2] The Commissioner points to the ALJ's inclusion of Ms. Hamlet's "description of [D.M.W.B.'s] difficulties with focus for extended periods, moodiness, acting out when seeking attention, and a need for special reading intervention for 30 minutes each day" under the appropriate domains as reported on the teacher questionnaire.  *Id.* at 6.

6

acquiring and using information, attending and completing tasks, and interacting and relating with others[,]" *id*. at 8.

As previously noted, there are six functional equivalence domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  *See, infra, Coleman*, 454 F. App'x at 752.  If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled.  *Id*.

Under the domain of acquiring and using information, Ms. Hamlet concluded that D.M.W.B. has a serious problem[3] in all ten categories, noting that D.M.W.B. "is pulled for reading intervention daily for 30 min[utes]."  Tr. 151-56 (Ex. 15E (Doc. 14-6)).  Similarly, in evaluating D.M.W.B.'s proficiency in attending and completing tasks, Ms. Hamlet determined that D.M.W.B. has a serious problem in twelve out of thirteen categories, noting that he "has a hard time focusing for an extended period of time to finish his work."  Tr. 152.  Considering the domain of interacting and relating with others, Ms. Hamlet advised that D.M.W.B. has a serious problem in all thirteen categories, and that behavior modification was necessary to curb D.M.W.B.'s inappropriate actions.  Tr. 153.  In evaluating D.M.W.B.'s ability to move and manipulate

---

[3] A serious problem is scored as four out of five on the rating scale for the teacher evaluation.

objects, Ms. Hamlet concluded that he has a very serious problem[4] in all seven categories.[5]  Tr. 154.  She also noted that D.M.W.B. "has to move all of the time." *Id.*  In the domain of caring for himself, Ms. Hamlet scored D.M.W.B. as having a serious problem in one out of ten categories, an obvious problem in four, a slight problem in two, and no problem in three.  Tr. 155.  Ms. Hamlet further noted, however, that D.M.W.B. "has difficulty with controlling his moods." *Id.*  Finally, in the domain of health and physical well-being, Ms. Hamlet noted that D.M.W.B. "has asthma, but [it] has not been a problem." Tr. 156.

With regards to these domains, the ALJ found that D.M.W.B. had "less than marked limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being. Tr. 19-24.  The ALJ found that D.M.W.B. had "no limitation" in the domains of moving about and manipulating objects, and in caring for himself.  Tr. 22-23.  In reaching these determinations, the ALJ referenced Ms. Hamlet's teacher evaluation on three occasions:

---

[4] A very serious problem is scored as five out of five on the rating scale for the teacher evaluation.

[5] As noted in the ALJ's opinion, "[t]his domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. . . . Limitations . . . can be associated with musculoskeletal and neurological problems, other physical impairments, medications or treatments, or mental impairments." Tr. 22.  While Ms. Hamlet marked that D.M.W.B. has severe impairments in all of the seven categories, she noted that D.M.W.B. "has to move all the time." Tr. 154. It is possible that Ms. Hamlet assumed that this domain related to D.M.W.B.'s hyperactive movements, instead of his motor skills and his ability to manipulate objects, and marked the limitations accordingly. However, that determination is not for the undersigned to make.

 (1) In acquiring and using information, the ALJ noted that Ms. Hamlet "reports a need for some special reading intervention for 30 minutes each day. . . ." *Id*. at 20. He did not reference Ms. Hamlet's assessment that D.M.W.B. has a serious problem in all ten categories of this domain.

 (2) In attending and completing tasks, the ALJ noted that Ms. Hamlet "describes some difficulties with focus for extended periods. . . ." *Id*. at 21. He did not reference Ms. Hamlet's assessment that D.M.W.B. has a serious problem in twelve out of thirteen categories in this domain.

 (3) In interacting and relating with others, the ALJ noted that Ms. Hamlet reported "some moodiness and acting out inappropriately when [D.M.W.B.] is seeking attention." *Id*. at 22. He did not reference Ms. Hamlet's assessment that D.M.W.B. has a serious problem in all thirteen categories of this domain.

Under the domains of moving about and manipulating objects, and caring for oneself, the ALJ noted that there were "no allegation[s] of limitation[s] in [those] domains." *Id*. at 22, 23.

 Social Security Ruling 06–03p states:

 Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," *or*

> *otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning*, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added). The Eleventh Circuit has held that an ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). However, the ALJ must explain the weight afforded to "obviously probative exhibits[,]" *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981), or the reasoning in his decision must sufficiently enable a court to conclude that the ALJ fully considered the claimant's condition, and did not ignore evidence—like that in a teacher evaluation—that was patently inconsistent with the ALJ's ultimate findings, *Green*, 2010 WL 4941425, at *4. Here, the court cannot conclude that the ALJ has met this standard.

As an initial note, nowhere in his opinion does the ALJ state what weight he is assigning to Ms. Hamlet's evaluation. Thus, according to SSR 06-03p, he must otherwise ensure that his discussion of the evidence allows a subsequent reviewer to follow his reasoning for his decision that D.M.W.B. is not disabled.

During the Step Three determination of whether D.M.W.B. has a combination of impairments that results in either "marked" limitations in two of the functional equivalence domains or "extreme" limitation in one domain, the ALJ referenced his review of Ms. Hamlet's teacher evaluation in three of the six domains. That review, however, failed to note that Ms. Hamlet reported D.M.W.B. to have "serious" problems

10

in ten of ten categories related to the domain of acquiring and using information; twelve of thirteen categories related to the domain of attending and completing tasks; and thirteen of thirteen categories related to the domain of interacting and relating with others. The ALJ's review failed to note that Ms. Hamlet reported D.M.W.B. to have "very serious" problems in seven of seven categories related to the domain of moving and manipulating objects. Instead, when discussing each domain, the ALJ noted the evidence supporting his conclusion that D.M.W.B. was not disabled,[6] and followed that brief discussion with one sentence reciting Ms. Hamlet's handwritten notes regarding the domain. *See* Tr. 20 ("However, a teacher reports a need for some special reading intervention. . . ."); Tr. 21 ("However, one teacher describes some difficulties with focus. . . ."; Tr. 22 ("A teacher reports some moodiness and acting out inappropriately. . . ."). While the ALJ pointed to the notes made by Ms. Hamlet on the questionnaire that cut *slightly* against the ALJ's finding, he failed to address Ms. Hamlet's concerns that D.M.W.B. had *serious* and *very serious* problems in multiple domains. Instead, it appears that the ALJ downplayed Ms. Hamlet's assessment by including the information that did not reflect the severity of her concerns. Further, the ALJ provided no reasoning as to why he was discounting Ms. Hamlet's evaluation by not discussing her concerns for D.M.W.B. in the different domains. Thus, because the ALJ failed to provide a

---

[6] The ALJ's opinion provides lengthy discussion during Step Two with regards to evidence in the case from consulting physicians, D.M.W.B.'s mother, and D.M.W.B.'s grandmother. *See* Tr. 14-19. In that discussion, the ALJ notes that he is assigning "great weight" to the findings of the DDS medical experts who found no more than less than marked limitations. Tr. 18. The ALJ did not refer to Ms. Hamlet's

meaningful discussion involving his evaluation of the evidence, this court is precluded from conducting a meaningful review of his decision to determine whether the ALJ ignored evidence that was patently inconsistent with his ultimate findings. *See Tyler v. Colvin*, 2016 WL 4445482, at *8 (N.D. Fla. June 14, 2016) (holding that the ALJ's discussion involving teach questionnaires did not allow a meaningful review by the court when the only portion of the questionnaires the ALJ credited were the statements that the plaintiff's symptoms improved with medication).

The ALJ's failure to sufficiently discuss the reasons why he discounted Ms. Hamlet's questionnaire is evident in the ALJ's evaluation of the domain of moving about and manipulating objects. In that domain, Ms. Hamlet concluded that D.M.W.B. has a very serious problem—the most severe rating that could be assigned under the questionnaire—and noted that he "has to move all of the time." Tr. 154. However, in making his determination that D.M.W.B. has no limitation in that area, the ALJ noted that "there is no allegation of a problem in this domain." Tr. 22. The undersigned cannot agree with the ALJ that there is *no* allegation of a problem in this domain. If the ALJ was of the opinion that Ms. Hamlet's assessment was faulty in some way, or if the ALJ relied upon other evidence suggesting that there was no problem in this area, the ALJ could have easily discussed the reasons for his conclusion and discounted Ms. Hamlet's opinion. He did not, and now the court is left with evidence that there *is* an allegation of

---

questionnaire during Step Two.

a problem within the domain of moving about and manipulating objects that the ALJ has ignored.

Accordingly, the matter is due to be remanded for the ALJ to properly consider Ms. Hamlet's teacher evaluation, and all other evidence in the record, pertaining to D.M.W.B.'s limitations in the six different domains.

### B. Whether the ALJ provided meaningful rationale to support his meets, medically equals, and functionality equals determination.

Because the undersigned concludes that this matter is due to be reversed and remanded for further proceedings, the undersigned will not address Plaintiff's second argument at this time.

### VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above; the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 26th day of October, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE